IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN HENDRICKSON, an individual; and
JENNIFER HENDRICKSON, an individual,

    Plaintiffs,

   v.

POPULAR MORTGAGE SERVICING, Inc., et al.,

    Defendants.
    /

No. C 09-00472 CW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Plaintiffs John and Jennifer Hendrickson charge Defendants Popular Mortgage Servicing, Equity One, Household Financing Corp. (HFC), Litton Loan Servicing and LandAmerica One Stop with violating federal and California statutory law and California common law in connection with the sale of certain residential mortgage products. Defendants filed three separate motions to dismiss: HFC and Litton filed a joint motion; Popular and Equity One also filed a joint motion; and LandAmerica filed its own motion.[1] Plaintiffs oppose the motions. The matter was heard on

---

[1] Plaintiffs object to Popular's and Equity One's joinder in HFC's motion to dismiss as untimely. The Court denies this objection as moot because all parties have had sufficient time to

(continued...)

April 30, 2009.  Having considered oral argument and all of the papers submitted by the parties, the Court grants Defendants' motions in part and denies them in part and grants leave to amend.

## BACKGROUND

On June 2, 2003, Plaintiffs purchased a home in Sonoma County, California for $420,000, with the assistance of a home loan (first mortgage).  The complaint does not explicitly mention the name of the company that provided Plaintiffs with this loan.  However, it appears from documents attached to the complaint and the moving papers that People's Choice Home Loan supplied the loan and Popular serviced it.

In April, 2006, Plaintiffs spoke with HFC about obtaining a second mortgage.  During this conversation, HFC "indicated that a loan could be obtained, which would be favorable to Plaintiffs by consolidating higher interest debt at a lower rate.  Plaintiffs were also told they would be able to benefit from a 'good customer' interest rate reduction after a few months of timely payments on the loan."  Complaint, ¶ 27.  In May, 2006, HFC told Plaintiffs that, to qualify for the loan, they would also be required to consolidate their other outstanding debt, which carried low interest rates.  Id. at ¶ 28.  Included in the amount to be consolidated was $26,217 in Plaintiffs' student loans, which was then accruing interest at 2.25 percent.  Plaintiffs agreed and established a second mortgage with HFC, financing $61,194 at an interest rate of 13.95 percent.  Of this amount, $41,076 was disbursed to Plaintiffs' other creditors to pay off outstanding

---

[1](...continued)
brief the matter.

2

1  debts as part of the consolidation requirement.  HFC also disbursed
2  $16,392 in cash to Plaintiffs to be used for future education
3  expenses.
4       In December, 2006, Plaintiffs contacted HFC to negotiate a
5  lower interest rate on the second mortgage.  HFC offered Plaintiffs
6  the chance to refinance it at a lower rate due to Plaintiffs' good
7  payment history.  Id. at ¶ 30.  In a later conversation, but before
8  signing the new loan, HFC informed Plaintiffs that, to qualify for
9  the interest rate reduction, they would have to consolidate
10 additional debt.  Plaintiffs agreed and on January 26, 2007, they
11 refinanced the second mortgage at a rate of 11.415 percent.  The
12 new amount of the second mortgage was $82,149, which included a
13 $1,193 cash payout to Plaintiffs.
14      In October, 2007, Plaintiffs contacted Popular to discuss a
15 modification of their first mortgage.  In a few months, the
16 interest rate on the first mortgage would switch from a fixed rate
17 to a variable rate, and Plaintiffs wanted to secure a favorable
18 fixed rate loan for an extended period of time.  Popular referred
19 Plaintiffs to Equity One.  Equity One offered Plaintiffs a fixed
20 rate loan at one percent higher than the original fixed rate on the
21 first mortgage.  Equity One "assured [Plaintiffs that they] would
22 qualify and the modification would be completed expeditiously."
23 Complaint ¶ 14.
24      As part of the loan application process, Plaintiffs provided
25 Equity One with various personal financial information, including
26 their monthly income and expenses.  Equity One used this
27 information to prepare a financial worksheet for Plaintiffs to
28 verify, sign and date.  The worksheet contained four columns with

3

**United States District Court**
For the Northern District of California

the following headings: monthly expenses, stated amounts, confirmation and initial. On October 23, 2007, Equity One emailed the worksheet to Plaintiffs with the first two columns completed and stated that, when filling out the remainder of the document, they should "be sure to write numbers in the confirmation column, just like what I have in the stated amount column, and then initial in the initial column." Complaint, Exh. B. Plaintiffs did as Equity One instructed -- they copied the figure in the stated amounts column to the confirmation column, initialed next to each amount, and signed and returned the worksheet to Equity One. The next day, Plaintiffs "realized" that the financial information on the worksheet was not accurate and that it "had been changed without their knowledge." Complaint ¶ 17. The worksheet listed phone expenses as $300 per month, education and daycare expenses as $0 per month and insurance expenses as $600 per month. However, in earlier discussions, Plaintiffs told Equity One that their phone expenses were $53 per month, education and daycare expenses were $1200 per month and insurance expenses were $248 per month. The financial worksheet that Plaintiffs signed understated their expenses by $601 per month.

Plaintiffs wrote Equity One an email about this inaccuracy. Equity One responded, "Just write what I have . . . If I made them higher, it is for a reason . . . to make it work . . . thanx." On December 11, 2007, Plaintiffs completed the loan modification agreement by sending Equity One $11,655.92 in loan payments, and signed and notarized the loan documents.

In January, 2008, Plaintiffs received a monthly statement from Equity One that listed their new mortgage payment as $3,327.22.

4

Plaintiffs allege that this amount was "contrary to the assertions of Equity one." Complaint ¶ 22. The complaint does not describe how or why this amount was contrary to anything Equity One stated. At some point between January, 2008 and August, 2008, Plaintiffs fell behind in their payments on the second mortgage. On August 29, 2008, a Notice of Default regarding this loan was recorded. LandAmerica was listed as the foreclosure trustee.

In November, 2008, the first mortgage held by Equity One "was sold or transferred" to Wells Fargo. Complaint ¶ 35. As part of this transaction, Litton Loan Servicing became Plaintiffs' new loan servicing company for this mortgage. Id. On November 17, 2008, Plaintiffs wrote to Litton and challenged the validity of the debt underlying the mortgage. Complaint, Exh. O. Plaintiffs explained that the loan was not valid because it was based on false income information. Id. Litton responded on December 1, 2008 with a letter that acknowledged receipt of Plaintiffs' letter and noted that it would take sixty days to respond. Complaint, Exh. P. Litton advised Plaintiffs to continue to make loan payments during this time period. Id.

On December 22, 2008, Plaintiffs "received 36 letters concerning a Notice of Trustee Sale" via regular mail. Complaint ¶ 39. Plaintiffs attached a few of these notices to the complaint, but they are mostly illegible. It is not entirely clear from the complaint, but it appears that at least one of these notices was sent by Litton. The notices listed a January 15, 2009 trustee sale date. On December 23, 2008, Plaintiffs called Litton and were told that their loan was "not in foreclosure status, that there was no demand date set," and that the "entire account was on hold due to

5

the possibility of pending litigation." Complaint ¶ 40. The complaint is not clear as to whether the "possibility of pending litigation" refers to the present lawsuit or a different legal action.

Plaintiffs filed the present complaint in Sonoma County Superior Court on January 5, 2009. Plaintiffs plead twelve causes of action in their complaint: (1) Fraud; (2) Negligent Misrepresentation; (3) Negligence; (4) Breach of Fiduciary Duty; (5) Constructive Fraud; (6) Breach of Implied Covenant of Good Faith and Fair Dealing; (7) Unfair Debt Collection Practices; (8) Violations of Real Estate Settlement Procedures Act; (9) Violations of Predatory Lending Act; (10) Unfair Business Practices; (11) Declaratory Relief; and (12) Request for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction. The superior court signed a temporary restraining order enjoining the sale of Plaintiffs' home. On February 2, 2009, Defendants removed the case to federal court.

Defendant HFC moves to dismiss claims one through six and eight through twelve. Defendants Litton and LandAmerica move to dismiss claims one through seven and ten though twelve. Defendants Popular Mortgage and Equity One move to dismiss claims one through seven, ten and twelve.

## LEGAL STANDARD

II. Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate

6

only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

DISCUSSION

The Court discusses Plaintiffs' twelve causes of action in turn.

7

I.   First and Second Causes of Action: Fraud and Negligent Misrepresentation

Under California law, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)).  A claim for fraud under the tort of negligent misrepresentation does not require scienter or intent to defraud; rather, to establish fraud through nondisclosure or concealment of facts, it is necessary to show that the defendant "was under a legal duty to disclose them." Lingsch v. Savage, 213 Cal. App. 2d 729, 735 (1963); Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798 (2007).[2]

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

---

[2] Most district courts within the Ninth Circuit have held that a negligent misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b). Deitz v. Comcast Corp., 2006 WL 3782902 (N.D. Cal.); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (stating that the elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud, with the exception that the defendant need not actually know the representation is false).

8

Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b)("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). Allegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); however, as to matters peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

    A.  Fraud and Negligent Misrepresentation Claim Against HFC

    Plaintiffs' complaint fails to plead the manner in which any of HFC's statements are false. Plaintiffs argue that five statements HFC made were misrepresentations. In each of these statements HFC indicated that Plaintiffs could obtain a loan with a favorable interest rate. Plaintiffs argue that these statements were false because when HFC first mentioned the possibility of a lower interest rate, it did not contemporaneously note that consolidating other debt, which had lower interest rates at the time, would be required.

    For instance, Plaintiffs assert that in April, 2006, "HFC representatives indicated a loan could be obtained, which would be favorable to Plaintiffs by consolidating higher interest debt at a lower rate," complaint ¶ 27, which was a misrepresentation because

9

Plaintiffs were later told that they would have to consolidate their low-interest student loan debt into the loan. However, conditions upon which loan approval depends does not make a misrepresentation out of a statement that a loan "could be obtained."

Plaintiffs assert that HFC made a second and similar misrepresentation when it stated in April, 2006, that Plaintiffs "would be able to benefit from a 'good customer' interest rate reduction after a few months of timely payments on the loan." Complaint ¶ 27. This statement is allegedly false because Plaintiffs were later told about the requirement to consolidate their low interest loans. As alleged, HFC made no promises that timely payments alone would result in the reduction of the interest rate on Plaintiffs' loan. Therefore, requiring consolidation as a condition of loan approval did not make a misrepresentation out of HFC's general statement about the possibility of obtaining a "good customer" interest rate reduction.

Plaintiffs assert that three additional statements by HFC in May, 2006, December, 2006 and January, 2007 were also misrepresentations. However, these three statements, similar to the two described above, all concern HFC's requirement to consolidate Plaintiffs' other debt in order to obtain a lower interest rate. As plead, Plaintiffs have not alleged that HFC made any misrepresentations about this requirement.

    B.  Fraud and Negligent Misrepresentation Claim Against Litton

The complaint, as plead, does not put Litton on notice as to its role in the alleged fraud. The complaint merely notes that

10

Litton (1) became Plaintiffs' loan servicer in November, 2008, (2) mailed Plaintiffs a validation-of-debt notice on November 17, 2008, (3) initiated foreclosure proceedings by sending out a notice of trustee's sale on December 22, 2008 and (4) notified Plaintiffs that the trustee sale would be placed on hold due to apparent pending litigation.  Though Plaintiffs dispute the validity of the debt underlying the loan, they have not put Litton on notice of the particular misconduct which is alleged to constitute the fraud.

       C.  Fraud and Negligent Misrepresentation Claim Against Equity One and Popular

Plaintiffs argue that their fraud claim against Equity One applies equally to Popular because "the entities are one and the same," and that Equity One is Popular's alter ego.  Opposition at 5.  Nothing in the complaint supports this theory.  Therefore, the Court treats the two companies as separate entities.

Plaintiff has not alleged any facts pertaining to Popular's conduct that constitute fraud.  The complaint notes that Plaintiffs contacted Popular to discuss refinancing and that Popular referred them to Equity One.  Plaintiffs do not provide any further detail as to Popular's role in the alleged fraud.  These allegations do not support a cause of action for fraud.

As to Equity One, Plaintiffs have adequately described with particularity the circumstances constituting fraud with respect to some of their allegations.  Plaintiffs have alleged that Equity One instructed them to falsify information on a financial worksheet in order to help them qualify for a mortgage modification.  The allegations in the complaint are sufficiently specific to enable Equity One to articulate a defense, and thus the requirements of

11

Rule 9(b) are satisfied.

However, the complaint does not contain allegations pertaining to the claim that the monthly loan payment amount that was allegedly promised by Equity One differed from the actual amount that the parties agreed to. Plaintiffs failed to allege the payment amount that they were allegedly promised, who purportedly made the promise and when these promises were made.

### D. Fraud and Negligent Misrepresentation Claim Against LandAmerica

Plaintiffs fail to plead any facts with respect to LandAmerica's role in any of the causes of actions alleged in the complaint. Plaintiffs simply argue that "the same arguments as to each defendant apply equally to LandAmerica, who was acting as an agent of the directing agency." Opposition to LandAmerica's Motion to Dismiss at 6. However, Plaintiffs fail to note which agency was the "directing agency." Instead, Plaintiffs assert that each Defendant was the agent, servant, or employee of each other, acting "with the consent, express and implied, of the other defendants." Complaint ¶ 9. Though a principal may be liable for the acts of an agent, an agent is not responsible for the acts of another agent, nor is an agent responsible for the acts of the principal. To hold LandAmerica liable on this cause of action, Plaintiffs must clarify its role with respect to the facts alleged and the other Defendants. As it stands, the complaint fails to do this.

## II. Third Cause of Action: Negligence

To be liable for negligence, the defendants must owe a duty of care to the person injured. <u>Nymark v. Heart of Fed. Savings & Loan Assn.</u>, 231 Cal. App. 3d 1089, 1095 (1991). Defendants assert

1  that they do not owe Plaintiffs any duty of care.

2      A. Negligence Claim Against HFC and Equity One

3  "[A]s a general rule, a financial institution owes no duty of
4  care to a borrower when the institution's involvement in the loan
5  transaction does not exceed the scope of its conventional role as a
6  mere lender of money." Id. at 1096; see also Kinner v. World
7  Savings & Loan Assn., 57 Cal. App. 3d 724, 732 (1976) (holding no
8  duty of care owed by lender to borrower to ensure adequacy of
9  construction loan); Wagner v. Benson, 101 Cal. App. 3d 27, 35
10 (1980) (finding no duty owed by lender to borrower where lender is
11 not involved extensively in borrower's business). Plaintiffs have
12 not plead that HFC's involvement in the loan transaction exceeds
13 the scope of its conventional role as a mere money lender.
14 However, Plaintiffs have adequately plead that, by encouraging
15 Plaintiffs to falsify information on a financial worksheet, Equity
16 One exceeded the scope of its conventional role as a money lender.
17 Therefore, the Court will not dismiss the negligence cause of
18 action against Equity One.

19 Plaintiffs also argue that HFC owes them a duty of care by
20 asserting that HFC is a "broker" under California Business and
21 Professions Code § 10131. This section defines a broker as a

> person who, for a compensation or in expectation of a
> compensation, regardless of the form of payment, does or
> negotiates to do one or more of the following acts for
> another or others: . . . (d) Solicits borrowers or
> lenders for or negotiates or collects payments or
> performs services for borrowers or lenders or note
> owners in connection with loans secured directly or
> collaterally by liens on real property or on a business
> opportunity.

27 However, all of the alleged actions about which Plaintiffs complain
28 were undertaken by employees of HFC itself. No one acted as a

13

broker.

Plaintiffs next argue that California Civil Code § 1701 creates a duty of care. Section 1701 provides, "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." However, this section is a general statement of the law and does not create a duty where one does not otherwise exist. For these reasons, HFC does not owe Plaintiffs a duty of care.

B. Negligence Claim Against Litton and Popular

Litton relies entirely on HFC's arguments pertaining to the negligence cause of action and duty of care. Litton cannot adopt all of HFC's arguments because Litton is a loan servicing company, whereas HFC is a money lender.

To support Plaintiffs' negligence claim against Litton, they merely point to the existence of Exhibits N, O, P, R and S.[3] Standing alone, these documents do not establish a duty of care. Further, Plaintiffs have not alleged that Litton's or Popular's involvement in the loan transactions exceeded the scope of their conventional roles as mere loan servicing companies. See Nymark, 231 Cal. App. 3d at 1096; Marks v. Ocwen Loan Servicing, 2008 U.S. Dist. LEXIS 12175 (N.D. Cal.).

C. Negligence Claim Against LandAmerica

A trustee in a nonjudicial foreclosure is "not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary." Pro Value Properties, Inc. v. Quality Loan

---

[3] In many instances in their briefs, Plaintiffs responded to Defendants' motions by simply identifying exhibits to their complaint without any supplemental argument. This method of argumentation is unavailing and unhelpful to the Court.

14

1  Service Corp., 170 Cal. App. 4th 579, 583 (2009).  As such, the
2  scope and nature of the trustee's duties in a nonjudicial
3  foreclosure "are exclusively defined by the deed of trust and the
4  governing statutes.  No other common law duties exist."  Pro Value
5  Properties, Inc. v. Quality Loan Service Corp., 170 Cal. App. 4th
6  579, 583 (2009).  Therefore, LandAmerica, as the foreclosure
7  trustee, did not owe Plaintiffs a duty of care beyond that set
8  forth in the governing statutes, California Civil Code § 2924 et
9  seq.

III. Fourth Cause of Action: Breach of Fiduciary Duty

"A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.  The same principle should apply with even greater clarity to the relationship between a bank and its loan customers."  Price v. Wells Fargo Bank, 213 Cal. App. 3d 465, 476 (1989) (internal quotations and citations omitted). Nothing in the complaint sufficiently describes the manner in which the loans granted to Plaintiffs by HFC and Equity One, or the servicing of those loans by Popular and Litton, create fiduciary relationships.  Similarly, LandAmerica does not have a fiduciary duty to Plaintiffs because a trustee in a nonjudicial foreclosure is "not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary."  Pro Value Properties, 170 Cal. App. 4th at 583.

IV. Fifth Cause of Action: Constructive Fraud

"Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship."  Salahutdin v. Valley of California, Inc., 24 Cal. App. 4th 555, 562 (1994). Generally, the law states that "constructive fraud comprises any

15

act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." Id. Because Plaintiffs have not properly asserted a confidential or fiduciary relationship with any Defendants, they cannot sustain a constructive fraud cause of action.

V.   Sixth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing

At the hearing on this motion, Plaintiffs notified the Court that they will not pursue this cause of action. Therefore, the Court dismisses it with prejudice.

VI.   Seventh Cause of Action: Unfair Debt Collection Practices

It is not clear from the complaint which Defendants violated which sections of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq., and the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Therefore, Defendants are not on fair notice of these claims against them.

VII.   Eighth Cause of Action: Real Estate Settlement Procedures Act (RESPA)

RESPA places a duty upon loan servicers to respond to "qualified written requests." A qualified written request is one that includes identifying information of the borrower and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(c)(1). Plaintiffs argue that exhibit M satisfies this requirement. Exhibit M is a letter from Plaintiffs to HFC that describes the alleged manner in which they were the victims of fraud. In bold capital letters at the top

16

of the letter, Plaintiffs wrote, "CALIFORNIA CIVIL CODE § 1782 NOTICE OF DEMAND." This letter does not constitute a "qualified written request" because HFC is not a loan servicer and the letter does not mention RESPA or loan servicing.

VIII. Ninth Cause of Action: Predatory Lending Act

The Predatory Lending Act prohibits a lender from refinancing a loan if the refinancing "does not result in an identifiable benefit to the consumer, considering the consumer's stated purpose for seeking the loan, fees, interest rates, finance charges, and points." Cal. Fin. Code § 4973(j). Plaintiffs allege that they received no identifiable benefit when they obtained their second mortgage or when they refinanced that mortgage. Plaintiffs' stated goal for obtaining and refinancing that second mortgage was to keep their interest rates low. However, as a condition of obtaining and refinancing the mortgage, Plaintiffs were required to consolidate their other outstanding debt, which was at a low interest rate, into a higher rate. For instance, before obtaining their second mortgage, Plaintiffs' had a student loan of $26,217, which was accumulating interest at a rate of only 2.25 percent. However, after consolidation, the student loan debt carried an interest rate of 13.95 percent, as did all of their other consolidated debt included in the second mortgage. Plaintiffs assert that consolidating their student loan debt only benefitted HFC, not Plaintiffs. HFC counters that, irrespective of the higher interest rate placed upon Plaintiffs' student loans after consolidation, Plaintiffs benefitted from the second mortgage and refinancing by receiving cash payments totaling over $17,000. The Court concludes that, though the cash payment may have benefitted Plaintiffs, their

17

stated purpose for seeking a second mortgage and refinancing was to obtain a low interest rate. Overall, because of the consolidation requirement, Plaintiffs did not benefit from these transactions. Therefore, the Court denies HFC's motion to dismiss this cause of action.

IX. Tenth Cause of Action: California's Unfair Competition Law Claims

California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Ct., 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003). Although the complaint is not without flaws, it adequately describes how HFC and Equity One allegedly committed unfair business practices. However, Plaintiffs have not sufficiently plead that the actions of Litton, Popular and LandAmerica constituted unfair business practices. As alleged, nothing about how these companies conducted their daily operations leads to a reasonable inference that they acted unlawfully.

X. Eleventh Cause of Action: Declaratory Relief

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a

18

case of actual controversy." 28 U.S.C. § 2201; see <u>Wickland Oil Terminals v. Asarco, Inc.</u>, 792 F.2d 887, 893 (9th Cir. 1986). The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution. <u>American States Ins. Co. v. Kearns</u>, 15 F.3d 142, 143 (9th Cir. 1993). Defendants assert that an action for declaratory relief cannot lie because there is not an "actual controversy" between themselves and Plaintiffs. Although, in this order, the Court dismisses many causes of action plead against Defendants, claims survive so as to warrant the use of declaratory judgment.

XI.   Twelfth Cause of Action: Injunctive Relief

Injunctive relief is a remedy, not a cause of action. Therefore, the Court dismisses this claim against all Defendants. Plaintiffs may seek injunctive relief on other causes of action as appropriate.

## CONCLUSION

For the foregoing reasons, the Court grants in part Defendants' motions to dismiss and denies them in part. The Court grants Plaintiffs leave to amend their complaint. In addition to addressing the deficiencies outlined in this Order, Plaintiffs should amend their complaint to describe which of Defendants' acts pertain to each cause of action.

Plaintiffs may file and serve an amended complaint within twenty (20) days of this order. Defendants shall respond with an answer or a motion to dismiss twenty (20) days thereafter. If Defendants respond by filing a motion to dismiss, they are strongly encouraged to join in a single brief. A further case management

1  conference will be held on the same date as the hearing on the
2  motion.  If no motion to dismiss is filed, a further case
3  management conference will be held on August 4th, 2009 at 2:00 p.m.
4        IT IS SO ORDERED.

6  Dated: 5/21/09

                                          CLAUDIA WILKEN
                                          United States District Judge

**United States District Court**
For the Northern District of California