IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HENDRICKSON, an individual; and JENNIFER HENDRICKSON, an individual,<br><br>    Plaintiffs,<br><br>  v.<br><br>POPULAR MORTGAGE SERVICING, Inc., et al.,<br><br>    Defendants. | No. C 09-00472 CW<br><br>ORDER GRANTING DEFENDANT LITTON'S MOTION TO DISMISS CERTAIN CLAIMS |

    Plaintiffs John and Jennifer Hendrickson charged Defendants Popular Mortgage Servicing, Equity One, Household Financing Corp. (HFC), Litton Loan Servicing and LandAmerica One Stop with violating federal and California statutory law and California common law in connection with the sale of certain residential mortgage products. Defendants filed two separate motions to dismiss: HFC and Litton filed a joint motion; and Popular and Equity One also filed a joint motion. Plaintiffs opposed the motions. The matter was heard on August 27, 2009. Having

considered oral argument and all of the papers submitted by the parties, the Court grants Defendant Litton's motion.[1]

BACKGROUND

On June 2, 2003, Plaintiffs purchased a home in Sonoma County, California for $420,000, with the assistance of a home loan (first mortgage).[2]  The complaint does not explicitly mention the name of the company that provided Plaintiffs with this loan.  However, it appears from documents attached to the complaint and the moving papers that People's Choice Home Loan supplied the loan and Popular serviced it.[3]

In April, 2006, Plaintiffs spoke with HFC about obtaining a second mortgage.  During this conversation, HFC "indicated that a loan could be obtained, which would be favorable to Plaintiffs by consolidating higher interest debt at a lower rate.  Plaintiffs were also told they would be able to benefit from a 'good customer' interest rate reduction after a few months of timely payments on the loan."  First Amended Complaint (FAC), ¶ 35.  In May, 2006, HFC told Plaintiffs that, to qualify for the loan, they would be required to consolidate their other outstanding debt, which carried

---

[1] On September 17, 2009, on the parties' stipulation, the Court dismissed with prejudice Plaintiffs' claims against Popular and Equity One.  On October 12, 2009, HFC filed a notice of settlement, which stated that it had settled all of Plaintiffs' claims against it.

[2] The Court grants Defendant HFC's request for judicial notice of the HUD-1 final settlement statements, the loan agreements and the list of historical rates on Treasury bonds because they contain facts which are not subject to reasonable dispute.  Fed. R. Evid. 201.

[3] People's Choice Home Loan filed for Chapter 11 bankruptcy on March 20, 2007.  Equity One subsequently purchased a portfolio of loans formerly held by People's Choice, one of which was Plaintiffs' loan.

2

low interest rates. Id. at ¶ 36. Included in the amount to be consolidated was $26,217 in Plaintiffs' student loans, which was then accruing interest at 2.25 percent. Plaintiffs agreed and established a second mortgage with HFC, financing over $57,000 at an interest rate of 13.95 percent.[4] Of this amount, $41,076 was disbursed to Plaintiffs' other creditors to pay off outstanding debts as part of the consolidation requirement. HFC also disbursed $16,392 in cash to Plaintiffs to be used for future education expenses.

In December, 2006, Plaintiffs contacted HFC to negotiate a lower interest rate on the second mortgage. HFC offered Plaintiffs the chance to refinance it at a lower rate due to Plaintiffs' good payment history. Id. at ¶ 39. In a later conversation, but before signing the new loan, HFC informed Plaintiffs that, to qualify for the interest rate reduction, they would have to consolidate additional debt. Plaintiffs agreed and on January 26, 2007, they refinanced the second mortgage, receiving a rate of 11.415 percent. The new amount of the second mortgage was $82,149, which included a

---

[4] HFC claims that the interest rate on Plaintiffs' loan was 12.732 percent. The first page of the loan, under the Truth-in-Lending Disclosure, states that the annual percentage rate, "the cost of your credit as a yearly rate," is 12.732 percent. The second page of the loan provides that "the figure disclosed in the Annual Percentage Rate box on page one is a composite Annual Percentage Rate which reflects the effect of the various interest rate reductions over the term of your loan." The fourth page of the loan, under the heading, "About Your Loan Repayment," states that the loan carries a yearly contract rate of 13.95 percent, which "will decrease by 0.40 % beginning with the thirteenth (13th) month after every twelve (12) consecutive monthly periods where all monthly installments were made in full within 30 days of their due date. Up to a maximum of 10 contract rate reductions are available during the term of your loan." HFC Request For Judicial Notice, Exh. 2. California predatory lending laws are concerned with the APR, which is 12.732 percent, not the contract rate. See Cal. Fin. Code § 4970(a) and (b).

$1,193 cash payout to Plaintiffs.

In October, 2007, Plaintiffs contacted Popular to discuss a modification of their first mortgage.  In a few months, the interest rate on the first mortgage would switch from a fixed rate to a variable rate, and Plaintiffs wanted to secure a favorable fixed rate loan for an extended period of time.  Popular referred Plaintiffs to Equity One.  Plaintiff Jennifer Hendrickson spoke to Patricia Damian, who claimed to be an agent for both Equity One and Popular.  Damian offered Plaintiffs a fixed rate loan at one percent higher than the original fixed rate on the first mortgage.  Plaintiffs' new monthly payment on their first mortgage would be $3,244.77.  Damian "assured [Plaintiffs that they] would qualify and the modification would be completed expeditiously."  Id. ¶ 21.

As part of the loan application process, Plaintiffs provided Damian with personal financial information, including their monthly income and expenses.  Damian used this information to prepare a financial worksheet for Plaintiffs to verify, sign and date.  The worksheet contained four columns with the following headings: monthly expenses, stated amounts, confirmation and initial.  On October 23, 2007, Damian emailed the worksheet to Plaintiffs with the first two columns completed and stated that, when filling out the remainder of the document, they should "be sure to write numbers in the confirmation column, just like what I have in the stated amount column, and then initial in the initial column."  FAC, Exh. B.  Plaintiffs did as Damian instructed -- they copied the figure in the stated amounts column to the confirmation column, initialed next to each amount, and signed and returned the worksheet to Damian.  The next day, Plaintiffs "realized" that the

4

financial information on the worksheet was not accurate and that it "had been changed without their knowledge." FAC ¶ 24. The worksheet listed phone expenses as $300 per month, education and daycare expenses as $0 per month and insurance expenses as $600 per month. However, in earlier discussions, Plaintiffs told Damian that their phone expenses were $53 per month, education and daycare expenses were $1200 per month and insurance expenses were $248 per month. Altogether, the financial worksheet that Plaintiffs signed understated their expenses by $601 per month.

Plaintiffs wrote Damian an email about this inaccuracy. Damian responded, "Just write what I have . . . If I made them higher, it is for a reason . . . to make it work . . . thanx." FAC, Exh. E (ellipses in the original). On December 11, 2007, Plaintiffs completed the loan modification agreement by sending Equity One $11,655.92 in loan payments, and signed the loan documents.

In January, 2008, Plaintiffs received a monthly statement from Equity One that listed their new first mortgage payment as $3,327.22, instead of $3,244.77. At some point between January, 2008 and August, 2008, Plaintiffs fell behind in their payments on the second mortgage. On August 29, 2008, a Notice of Default regarding the second mortgage loan was recorded. LandAmerica was listed as the foreclosure trustee.

In November, 2008, the first mortgage held by Equity One "was sold or transferred" to Wells Fargo. FAC ¶ 43. As part of this transaction, Litton became Plaintiffs' new loan servicing company for this mortgage. Id. On November 17, 2008, Plaintiffs wrote to Litton and challenged the validity of the debt underlying the

5

mortgage. FAC, Exh. O. Plaintiffs explained that the loan was not valid because it was based on false income information. Id. Litton responded on December 1, 2008 with a letter that acknowledged receipt of Plaintiffs' letter and noted that it would take sixty days to respond. Complaint, Exh. P. Litton advised Plaintiffs to continue to make loan payments during this time period. Id.

On December 22, 2008, Plaintiffs "received 36 letters concerning a Notice of Trustee Sale" via regular mail. FAC ¶ 47. Plaintiffs attached a few of these notices to the complaint, but they are mostly illegible. It is not entirely clear from the complaint, but it appears that at least one of these notices was sent by Litton. The notices listed a January 15, 2009 trustee sale date. On December 23, 2008, Plaintiffs called Litton and were told that their loan was "not in foreclosure status, that there was no demand date set," and that the "entire account was on hold due to the possibility of pending litigation." FAC ¶ 48. The complaint is not clear as to whether the "possibility of pending litigation" refers to the present lawsuit or a different legal action. Litton also stated that the foreclosure notice "was an erroneous residual act of Popular Mortgage Servicing, the previous servicer on the loan." FAC ¶ 48.

Plaintiffs filed the present complaint in Sonoma County Superior Court on January 5, 2009. Plaintiffs plead twelve causes of action in their complaint: (1) Fraud; (2) Negligent Misrepresentation; (3) Negligence; (4) Breach of Fiduciary Duty; (5) Constructive Fraud; (6) Breach of Implied Covenant of Good Faith and Fair Dealing; (7) Unfair Debt Collection Practices;

6

(8) Violations of Real Estate Settlement Procedures Act; (9) Violations of Predatory Lending Act; (10) Unfair Business Practices; (11) Declaratory Relief; and (12) Request for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction.  On February 2, 2009, Defendants removed the case to federal court.

On May 21, 2009, the Court granted in part Defendants' motions to dismiss the complaint.  The Court dismissed with leave to amend the claims against all Defendants for breach of fiduciary duty, constructive fraud, breach of the implied covenant of good faith and fair dealing, unfair debt collection practices and violations of the Real Estate Settlement Procedures Act.  The Court dismissed with leave to amend the claims against HFC, Litton, Popular and LandAmerica for fraud, negligent misrepresentation and negligence.  The Court allowed these claims to proceed against Equity One.  The Court dismissed with leave to amend the claim for violation of the Predatory Lending Act against Litton, Popular and LandAmerica.  The Court allowed this claim to proceed against HFC.  The Court also dismissed with leave to amend the unfair business practices claim against Litton, Popular and LandAmerica, but allowed the claim to proceed against HFC and Equity One.

Plaintiffs filed a FAC on June 9, 2009.  The FAC alleges the following claims: (1) Fraud, (2) Negligent Servicing, (3) Negligence, (4) Unfair Debt Collection Practices, (5) Violation of the Predatory Lending Act, (6) Unfair Business Practices, (7) Breach of Contract, (8) Negligent Misrepresentation, (9) Economic Duress and (10) Declaratory Relief.  Defendants HFC and Litton moved to dismiss Plaintiffs' fraud, negligent servicing,

7

predatory lending and negligent misrepresentation claims against them but did not move to dismiss the declaratory relief claim. Defendants Popular and Equity One moved to dismiss Plaintiffs' fraud, negligent servicing, breach of contract, and economic duress claims against them.[5]  On September 17, 2009, the Court, on the parties' stipulation, dismissed with prejudice Plaintiffs' claims against Popular and Equity One.  On October 12, 2009, HFC filed a notice of settlement, which stated that it had settled all of Plaintiffs' claims against it.  Thus, the Court will not discuss Plaintiffs' claims against Popular, Equity One and HFC.

                              LEGAL STANDARD
I.  Motion to Dismiss for Failure to State a Claim

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere

---

[5]The Court sua sponte dismisses all claims against Defendant LandAmerica because the FAC does not allege any causes of action against it.

8

1 conclusory statements," are not taken as true. Ashkcroft v. Iqbal,
2 ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550
3 U.S. at 555).
4     Although the court is generally confined to consideration of
5 the allegations in the pleadings, when the complaint is accompanied
6 by attached documents, such documents are deemed part of the
7 complaint and may be considered in evaluating the merits of a Rule
8 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265,
9 1267 (9th Cir. 1987).

DISCUSSION

I.    Fraud and Negligent Misrepresentation

    Under California law, "[t]he elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003) (quoting Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)). A claim for negligent misrepresentation does not require scienter or intent to defraud; rather, to establish fraud through non-disclosure or concealment of facts, it is necessary to show that the defendant "was under a legal duty to disclose them." Lingsch v. Savage, 213 Cal. App. 2d 729, 735 (1963); Buckland v. Threshold Enterprises, Ltd., 155 Cal. App. 4th 798 (2007).[6]

---

[6] Most district courts within California have held that a negligent misrepresentation claim is subject to the heightened pleading requirements of Rule 9(b). Deitz v. Comcast Corp., 2006 WL 3782902 (N.D. Cal.); Neilson v. Union Bank of California, N.A.,
(continued...)

9

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc., Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b)("Malice, intent, knowledge, and other condition of mind of a person may be averred generally"). Allegations of fraud based on information and belief usually do not satisfy the particularity requirements of Rule 9(b); however, as to matters peculiarly within the opposing party's knowledge, allegations based on information and belief may satisfy Rule 9(b) if they also state the facts upon which the belief is founded. Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987).

The FAC, as plead, does not put Litton on notice as to its role in the alleged fraud. The complaint merely notes that Litton (1) became Plaintiffs' loan servicer in November, 2008, (2) mailed

---

[6](...continued)
290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (stating that the elements of a cause of action for negligent misrepresentation are the same as those of a claim for fraud, with the exception that the defendant need not actually know the representation is false).

10

Plaintiffs a validation-of-debt notice on November 17, 2008, (3) initiated foreclosure proceedings by sending out a notice of trustee's sale on December 22, 2008 and (4) notified Plaintiffs that the trustee sale would be placed on hold due to apparent pending litigation.  Although Plaintiffs dispute the validity of the debt underlying the loan, they have not put Litton on notice of the particular misconduct which is alleged to constitute fraud or negligent misrepresentation.

II.   Negligent Servicing and Negligence

Plaintiffs allege claims against Litton for "negligent servicing."[7]  The Court is not aware of, and Plaintiffs have not cited, any case for the proposition that negligent servicing is a different cause of action than negligence.  Therefore, the Court will treat Plaintiffs' negligent servicing claims as part of their negligence claims.

Plaintiffs allege that Litton was negligent by

> failing to provide a response to Plaintiffs' requests for information as to the status of their loan; and in continuing with non-judicial foreclosure on Plaintiffs' home despite their diligence in requesting information regarding the loan and Litton's stated policy of forebearing from non-judicial foreclosure due to requests for information.

FAC at ¶ 75.  Plaintiffs do not cite any statute or case to support their argument that Litton had a duty to stop the foreclosure because Plaintiffs wrote letters to it.  If such a duty existed, borrowers could halt foreclosure sales simply by inquiring about the loan to the lender.  Moreover, Plaintiffs' vague allegations about failing to respond to their requests for information are too

---

[7] The Court need not discuss this claim against Popular because the parties have stipulated to dismiss with prejudice all claims against Popular.

11

conclusory "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 555.  Plaintiffs do not allege when they made information requests or which of these requests were ignored by Litton.  Therefore, the Court dismisses the negligence claim against Litton without leave to amend because the Court previously afforded Plaintiffs the opportunity to amend that claim.

The Court grants Defendants' requests to strike all requests for punitive damages because the Court dismisses those causes of action for which punitive damages are allowed.

The Court grants Litton's motion for a more definite statement with respect to the remaining cause of action against it, declaratory relief.  Because the Court has dismissed the other causes of action against Litton, the complaint has lost much of its meaning.  Therefore, the complaint has become "so vague or ambiguous that [Litton] cannot reasonably be required to frame a responsive pleading."

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Litton's motion to dismiss.  The Court grants this motion without leave to amend because the Court has previously afforded Plaintiffs the opportunity to amend their complaint.  The only remaining cause of action in this case is one for declaratory relief against Litton.  Plaintiffs may file and serve an amended complaint only with respect to the declaratory relief claim within twenty-one days from the date of this order.  **If Plaintiffs do not file an amended complaint, their case will be dismissed for failure to prosecute.** If Plaintiffs file an amended complaint, Litton shall respond with an answer or a motion to dismiss twenty-one days thereafter.  The

12

1  motion will be decided on the papers.
2      IT IS SO ORDERED.
3  Dated: 10/13/09
4                                   CLAUDIA WILKEN
                                    United States District Judge

13